## ANDREW GARR, assignee of John Patten, jr., v. JOHN M. MARTIN.

It is settled in this state, that an action will lie to recover back money paid upon a judgment which is afterwards reversed.

A defendant, against whom judgment had been recovered, sued out a writ of error, giving a bond with sureties for costs, &c., if the judgment should be affirmed. The judgment was affirmed by a state court, and one of the sureties paid to the plaintiff the amount due on the bond. Thereafter the judgment was reversed by the Supreme Court of the United States.

*Held,* that the surety, or his assignee, might maintain an action directly against the plaintiff in the original judgment, to recover back the sum paid.

There is a privity, arising on the bond, between the surety and the plaintiff in the judgment, sufficient to sustain the action, without putting the surety to an action against his principal, and the principal to an action against the plaintiff.

The right of action in such a case is founded upon a payment, the consideration of which having failed, an implied obligation arises, on the part of the party having received the money, to restore it to the party from whom he received it; and no equities existing between the plaintiff and the defendant could affect the right of the surety to recover back the payment.

To render a payment compulsory, in such a sense as entitles the party to bring an action to recover it back, it is not necessary that the party making it should wait till judgment has been recovered and execution issued: it is sufficient if the payment, when made, could have been compelled at law.

APPEAL by defendant from an order of the special term overruling a demurrer to the complaint. The action was brought by Andrew Garr, as assignee of John Patten, jr. The complaint alleged that, at the time of the assignment by Patten to the plaintiff, the defendant was indebted to Patten in the sum of $158.59, money had and received by defendant to the use of Patten under the following circumstances: That Patten, together with Cornelius Kanouse and Thomas P. Hart, executed a bond to defendant, dated April 30, 1846, for $150, conditioned, that if, on a writ of error sued out by Kanouse in the Supreme Court of the state of New York against Martin, on a judgment recovered by Martin against Kanouse, for $421.63, in the New York Common Pleas, the judgment should be affirmed, &c., &c., then Kanouse should pay the costs and damages awarded on said writ of error. That the writ of error was afterwards duly transferred to the New York Superior Court, to be determined by that court. That the Superior Court, in May, 1850, affirmed the judgment, and awarded Martin $320.18, for his costs and damages on the writ of error. That Martin thereafter sued Patten upon the bond above mentioned, and Patten, in order to prevent judgment and execution against him in that action, paid to Martin the amount of the penalty of the bond, with interest and costs, in all, $158.59. That thereafter the judgment of affirmance, rendered by the Superior Court, was brought before the Supreme Court of the United States, and was by that court reversed, and the cause remanded to the Superior Court for further proceedings, in conformity to the judgment of the Supreme Court; whereupon the judgment mentioned in the bond was, by the Superior Court, reversed.

The complaint further averred an assignment of the cause of action by Patten to the plaintiff.

The grounds of the demurrer were, that the complaint did

not state facts sufficient to constitute a cause of action in either Patten or the plaintiff.

The appellant in person.

I. There is no such privity between the plaintiff and defendant as to enable the former to maintain this action against the latter. *Rutland* v. *Paige*, 24 Verm. Rep. 181, 186; *Tom* v. *Goodrich*, 2 J. Rep. 214; *Krafts* v. *Creighton*, 3 Rich. 273, 275. No case can be found where a surety has been permitted to recover money paid for his principal, from any one but his principal (or some one standing in the place of his principal, as in the case of *Stephens* v. *Fitch*, 11 Met. 248), and his co-surety.

II. The remedy is an action against his *principal* for money *paid*. *Powell* v. *Smith*, 8 J. Rep. 249; *Sturges* v. *Allen*, 10 Wend. 354; *Elwood* v. *Diefendorf*, 5 Barb. S. C. R. 398, 410. Because it is *paid* for "*the use*" of the principal, and in satisfaction of *his* debt. *Rodman* v. *Hadden*, 10 Wend. 498, 502; *Butler* v. *Wright*, 20 J. Rep. 367; *Beardsly* v. *Post*, 11 J. Rep. 464; *Butler* v. *Wright*, 2 Wend. 369. And the surety can maintain the action against him *only*, whose legal liability is discharged. *Tom* v. *Goodrich*, 2 J. Rep. 213; *Krafts* v. *Creighton*, 3 Rich. 273, 276.

III. The right to a restitution of the money in this case vested in the plaintiff in error on the reversal of the judgment. 2 Paine & Duer's Pr., and cases cited, p. 489; Gr. Pr. p. 793, 1st ed.; *Cummings* v. *Noyes*, 10 Mass. Rep. 433. And no person can sue under this right except the party in whom the *title* was vested at the *time* the money was received, and his legal representatives. *Seaman* v. *Whitney*, 24 Wend. 260, 263. Therefore, the surety, if he would recover the money paid for his principal, must sue in his *principal's right*, and as his assignee. In that case the claim will be subject to all equities between his principal and the defendant, as of right it should be. *Colvin* v. *Owens*, 22 Ala. 782. But if the surety could have restitution in his own right by means of an action for money had and received, these equities could not be set up, and by this means would be *cut off* and *lost*. This will not be allowed to be done by means of this action, for

it "will not be extended to any case where a defendant will be deprived of any right, or the benefit of any privilege, thereby." *Rathbone* v. *Stocking*, 2 Barb. S. C. R. 135, 146, 147.

IV. The complaint and the cases cited under the second subdivision of the defendant's second point show that the money in question was paid and received for the *use of Kanouse*, and neither the surety who paid it nor his assignee can maintain an action for it as money had and received *to his use;* because the money was received to the use of the principal. *Eaton* v. *Dickson*, 2 Iredell, 243; 1 Chitty's Pleading, 387; Leigh's N. P. 51, and cases cited.

V. The money paid by Patten is a *part only* of Kanouse's claim for restitution, and if Patten can maintain this action, every other person who may have given credit, advanced money, or incurred liability in the original suits, can maintain his *separate* action, and a *multiplicity* of suits would thus follow the splitting of a single claim. This would not only deprive the defendant of his *equitable defences* against Kanouse, but would subject him to *onerous costs*, and be contrary to a settled policy of the law. *Farrington* v. *Payne*, 15 J. Rep. 432.

VI. The payment was not made by the surety to emancipate his *person* or *property* from duress, and was, therefore, *voluntary*. *Mayor of Baltimore* v. *Lefferman*, 4 Gill. 425; *Fleetwood* v. *City of New York*, 2 Sandf. S. C. R. 475, 481. A *voluntary* payment, with *full knowledge of the facts*, cannot be recovered back. *Wyman* v. *Farnsworth*, 3 Barb. S. C. R. 370; *Supervisors of Onondaga* v. *Briggs*, 2 Denio, 26, 39; *Abell* v. *Douglass*, 4 ibid. 305; *Silliman* v. *Wing*, 7 Hill, 159. And a payment will be *presumed* to have been made with a full *knowledge* of all the facts, in the absence of evidence to the contrary, of which there is none here. *Peterborough* v. *Lancaster*, 14 N. H. 382. Besides, Patten would have been discharged by the giving of the new error bond, if he had not voluntarily paid. *Winston* v. *Rives*, 4 Stew. & Port. 269.

*J. B. Staples*, for the respondent.

I. The law is well settled, that an action lies to recover back

money paid upon a judgment afterwards reversed. *Clark v. Pinney*, 6 Cowen, 297; *Maghee* v. *Kellogg*, 24 Wend. 32; *Stevens* v. *Fitch*, 11 Metcalf, 248; *Newdigate* v. *Dury*, 1 Lord Raymond, 742; Lofft's Rep. 207-8-9.

The rule, in reason and upon principle, applies, *a fortiori*, to the case of a surety upon an error bond, having paid money upon a judgment afterwards reversed.

II. The money having been paid by Patten upon the bond in error, upon a judgment, and paid to Martin himself, in a suit by Martin against Patten, upon the reversal of that judgment, the payment became money in the hands of Martin belonging to Patten, and nobody else; and Patten (or his assignee), and nobody else, has a right of action to recover it back, as money had and received, belonging to Patten. As soon as the judgment was reversed, the money thus paid became a debt *ex æquo et bono*, and in good conscience from Martin to Patten.

III. The payment by Patten to Martin, and after the suit brought by Martin against Patten, constitutes a privity of contract, or relation of debtor and creditor, upon which Patten, and he only (or his assignee), can sue; Kanouse could not maintain an action, as he did not pay the money.

DALY, J.—It is settled, in this state, that an action will lie to recover back money paid upon a judgment which is afterwards reversed. *Clark* v. *Pinney*, 6 Cow. 297; *Maghee* v. *Kellogg*, 24 Wend. 32. In *Clark* v. *Pinney* it was laid down as a general proposition, that an action lies in all cases where the defendant has in his hands money which *ex æquo et bono* belongs to the plaintiff. "When money," says Chief Justice Savage, "is collected upon an erroneous judgment, which, subsequent to the payment of the money, is reversed, the legal conclusion is irresistible, that the money belongs to the person from whom it was collected; of course, he is entitled to have it returned to him." In that case the action was brought by the defendant in the judgment, from whom the money was collected upon execution. In this case it is brought by the assignee of one of the sureties,

on a bond given to the defendant Martin, conditioned that the sureties would pay the damages and costs upon a judgment recovered by Martin in this court, and brought by writ of error to the Supreme Court, if it should be affirmed. The judgment was affirmed, and the plaintiff's assignee, after a suit was commenced against him by Martin on the bond, paid to the defendant Martin the amount of the bond. The judgment was subsequently reversed by the Supreme Court of the United States. The difference between the two courts constitutes no difference in the application of the principle. The judgment recovered by Martin having been finally reversed, he is not entitled to retain the money paid to him by the plaintiff's assignor. He has no title to it, but it belongs to the party from whom he received it, and to whom, *ex æquo et bono*, he is bound to restore it.

It is urged that there is no such privity between the plaintiff's assignor and the defendant as will entitle the former, or his assignee, to maintain an action against the latter. That, upon the payment of the money by the surety, he had his remedy against his principal, for whose benefit he paid it, and that he has no other remedy. That Martin, in consequence of the reversal of the judgment, may be bound to make restitution to the defendant in that judgment, but that he is not liable to restore the money to that defendant's surety. The short answer to that objection is, that there *is nothing to restore to the defendant in the judgment, for he never paid anything upon it. He may be* liable to his surety, but that liability is discharged if what was paid by the surety is restored to him by the defendant, and to effect that object it is not necessary to turn the surety over to his action against the judgment-debtor, and the judgment-debtor to an action against the defendant. The privity between the plaintiff's assignor and the defendant *arises from the bond.* Patten, the plaintiff's assignee, bound himself to the defendant to pay the costs and damages, if the judgment should be affirmed, and the judgment having been affirmed, he fulfilled his contract and paid the money to the defendant, upon a consideration which afterwards totally failed by reason of the reversal of the judgment.

In *Stevens* v. *Fitch* (11 Met. 248), it was held that a privity of con-
tract was implied by law, where a judgment against a defendant,
which was subsequently reversed, was paid to the plaintiff by a
party who had assumed the responsibility of the suit, and he
was allowed to recover it back.

It is further urged that, if the surety can recover the money
back, it must be on his principal's right, and as his assignee,
for that otherwise any equities the defendant here may have
against the defendant in the judgment would be cut off. But
the right of action here is founded upon a payment, the con-
sideration of which having failed, an implied obligation arises
on the. part of the defendant to restore it to the party from
whom he received it, and no equities existing between him and
the defendant in the judgment could possibly affect the right of
the plaintiff's assignor to recover back money to which the de-
fendant in the judgment has not, and never had, any title.

It is also insisted that the payment by Patten was not com-
pulsory, but was a voluntary payment made under a mistake of
law, and cannot therefore be recovered back. To make the pay-
ment compulsory, it was not necessary that Patten should wait
until Martin had recovered judgment against him and issued
execution, which would have subjected him to the costs of that
proceeding. It is sufficient if the payment, when made, could
have been compelled at law. If it could, he was justified in
making it, without waiting to be sued, or, as the fact was, having
been sued, without waiting until payment was enforced by an
execution and levy. The judgment having been affirmed, his
liability on the bond was then fixed, and the law would then
have compelled him to pay it; and paying it then was not pay-
ing it voluntarily under a mistake of law. *Bize* v. *Dickason*,
1 T. R. 285; Story on Contracts, note 1, to § 407. The reversal
of the judgment afterwards does not make it a payment under a
mistake of law, for a clear legal liability existed, by the con-
dition of the bond, when the payment was made, which could
be enforced as long as the judgment remained unreversed. Pat-
ten discharged that liability by payment. If he had not, it

would have been discharged by the subsequent reversal of the judgment. The effect of that reversal was, to take away the right which the defendant had acquired by the affirmance of the judgment in the Superior Court; and by the reversal Patten became entitled to receive back the money he had paid the defendant, and an obligation and duty was cast upon the defendant to return it to him.

The plaintiff is entitled to judgment upon the demurrer, and the appeal is dismissed, with costs.

Judgment accordingly.